RAHMAT A. NIAZMAND, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Niazmand
Docket No. 16985-91
United States Tax Court
T.C. Memo 1993-5; 1993 Tax Ct. Memo LEXIS 8; 65 T.C.M. (CCH) 1706; January 6, 1993, Filed *8 Decision will be entered for petitioner reflecting no deficiencies or overpayments. Rahmat A. Niazmand, pro se. For Respondent: Stephen C. Best. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined deficiencies in petitioner's Federal income tax and various additions to tax for taxable years 1979 through 1983, 1985, and 1986. Respondent now agrees that petitioner has no deficiencies or overpayments in income tax for the above-referenced taxable years. Respondent also agrees that there are no additions to tax for those taxable years. The issues remaining for our consideration are: (1) Whether this Court is authorized to decide overpayments for taxable years in which respondent made no deficiency determination; and (2) whether petitioner has substantiated a loss in excess of the amount agreed to by respondent and whether the loss is attributable to section 1244 [1] stock. *9 FINDINGS OF FACT The parties have entered into a stipulation of facts with exhibits which are incorporated by this reference. Petitioner had his legal residence in Providence, Rhode Island, at the time of the filing of the petition in this case. Petitioner, who earned his livelihood as a medical doctor, invested, during and prior to the years in issue, in various unsuccessful businesses. One such business involved a jewelry shop. Petitioner became involved with a particular family due to his purchase of a jewelry-type item. One member of that family, lacking a permanent place of business, had sold items of jewelry to individuals in public places. Petitioner agreed to be involved in a jewelry business in a permanent location with the itinerant jewelry salesman. Petitioner went to a lawyer and requested that a corporation be formed. An entity named "The Amneris, Inc.", was incorporated under the laws of Rhode Island during November 1977. The corporate charter or articles of incorporation of The Amneris, Inc., was forfeited for nonpayment of franchise taxes by the State of Rhode Island per notification dated December 31, 1980. Additionally, no stock certificates or other *10 documents which may have evidenced a corporate existence were seen by petitioner. Petitioner rented a business location and executed a lease under which he was personally responsible for making lease payments. Among other things, the jewelry salesman had agreed to provide $ 50,000 to $ 100,000 of jewelry merchandise to stock the store. The salesman did not meet his obligations under the agreement and petitioner decided to pursue the jewelry business venture on his own. During 1977, 1978, and 1979, petitioner paid expenses for rent, legal fees, utilities, repairs, salaries, interest, payroll taxes, and related expenditures. Petitioner claimed that these expenditures totaled $ 42,885. It is not clear, however, whether the claimed amount was in excess of the receipts of the jewelry business. Additionally, some of the payments were for inventory. Petitioner indiscriminately used his personal checks or jewelry business checks to pay various expenses. Petitioner's net investment in the jewelry business was $ 10,000. After 1978, petitioner ceased filing Federal income tax returns [2] until some time late in 1985 when he went to respondent's local office and sought assistance in filing *11 returns for years subsequent to 1978. Petitioner brought in unorganized checks and records of various businesses and tax-related matters. Respondent's agents refused to assist in the preparation of petitioner's returns. Late in 1986, respondent issued a summons(es) for petitioner's records for the taxable years 1979 through 1985. Subsequently, one of respondent's agents sent a letter and report to petitioner setting forth proposed income tax deficiencies for the taxable years 1979 through 1983, 1985, and 1986. On May 3, 1991, a notice of deficiency for the same taxable periods was mailed to petitioner, and his petition with this Court was filed on July 30, 1991. Thereafter, petitioner spent about 300 hours organizing his records into discrete and integrated batches relating to year and subject. During September 1991, respondent's Appeals office invited petitioner to a conference. That *12 was petitioner's first contact with respondent's Appeals office. Petitioner presented the better organized records to respondent's Appeals office, which in turn gave them to one of respondent's auditors. This audit took place early in October 1991, and within a few days after the completion of the audit petitioner was advised that the deficiencies in income tax and additions to tax determined for the taxable years 1979 through 1983, 1985, and 1986 would be conceded. Petitioner was not willing to accept respondent's concession and insisted that he should be paid refunds for the taxable years 1975 through 1978, which years were not included in the subject notice of deficiency. Respondent's Appeals office refused to agree to refunds and the matter proceeded to trial. Petitioner did not file claims for refund for any of the taxable years 1975 through 1978. Since October 1991, respondent has been willing to concede the deficiency determinations, as well as additions to tax, for all years set forth in the notice of deficiency. Additionally, respondent agrees that petitioner had "negative taxable income" [3] in each of the taxable years as follows: Taxable Year
"Negative Income"
1979
[4]($ 29,009)
1980
(16,858)
1981
(26,923)
1982
(37,493)
1983
(1,000)
1985
(2,507)
1986
(1,726)
*13 Respondent also agrees that these losses, if allowable after consideration of the requirements under section 172, may be net operating *14 losses which could be carried over from the years before the Court. Petitioner has no payment credits for the taxable years 1979 through 1983, 1985, and 1986. In that regard, the parties have stipulated that there are no overpayments for the 1979 through 1983, 1985, and 1986 taxable years. OPINION Jurisdiction of This Court To Decide an Overpayment in a Taxable Period for Which No Deficiency Was Determined
Petitioner contends that, because respondent agreed that there are losses in each of the years set forth in the notice of deficiency, this Court could determine carryback loss deductions and overpayments resulting in refunds of tax for the taxable years 1975 through 1978. Petitioner makes this contention even though the taxable years 1975 through 1978 were not included in the notice of deficiency upon which this case is based. Respondent argues that this Court does not have jurisdiction to decide the tax effect of a net operating loss deduction on taxable years which are not before the Court. We agree. This is a Court of limited jurisdiction. Sec. 7442. Respondent must generally make a determination and issue a notice of same as a prerequisite to our obtaining jurisdiction *15 or authority over a particular taxable period or year. Secs. 6212 and 6213. It is well established that we have no jurisdiction to decide an overpayment for a taxable period for which no deficiency was determined. ; , affd. per curiam 73-1 USTC par. 9205 (9th Cir. 1972); , affd. . Although we are without authority to decide a deficiency or overpayment for a taxable year for which respondent has not determined a deficiency, we can consider whether a loss can be carried back to or forward from a year not before the Court in order to decide its effect upon the taxable period under our jurisdiction. The years to which petitioner seeks to carry any net operating loss are not before the Court and, accordingly, we are without jurisdiction to decide an overpayment concerning them. Section 1244 Stock *16 and The Amount of Petitioner's Loss in Connection With the Jewelry Business
Although respondent has conceded that petitioner is not liable for income tax deficiencies or additions to tax, petitioner argues that he is entitled to losses in excess of those that would result in zero deficiencies. Petitioner claims an ordinary loss of $ 42,885 for his 1979 taxable year. The failure of petitioner to file returns or pay any tax for the years before the Court limits the outcome of this case to zero deficiencies (without the possibility of an overpayment). Perhaps petitioner seeks to establish carryover losses to a year which is not before this Court. In any event, it is unnecessary to decide [5] the amount of petitioner's loss in excess of the amount that is necessary to reach zero deficiencies, which respondent has conceded. *17 Claim for Costs and Fees Under Section 7430
Although our Rules provide that claims for litigation costs should be made after the Court's opinion is rendered, see Rules 231-233, petitioner, at trial, sought to claim litigation costs. Due to our Rules it would be premature to decide this aspect prior to the issuance of our opinion. [6]
*18 To reflect the foregoing, Decision will be entered for petitioner reflecting no deficiencies or overpayments.
Footnotes
1. Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to this Court's Rules of Practice and Procedure.↩
2. Presumably, petitioner did not file because of the losses he experienced in the jewelry and other hapless business ventures.↩
3. Respondent uses the term "negative taxable income" to describe the net amount by which deductions exceeded income. These amounts may result in a net operating loss after any adjustments required under sec. 172.↩
4. Respondent, at trial, orally stipulated to this amount of negative taxable income for 1979. Petitioner agrees that he had at least that amount, but also argues that he is entitled to an additional $ 39,885. That amount represents a professed loss which respondent determined was a long-term capital loss and limited to a $ 3,000 deduction for 1979. Petitioner asserts that he had a total of $ 42,885 of loss in connection with the jewelry business. Respondent also argues that petitioner has not substantiated any more than the $ 3,000 which was allowed as part of the $ 29,009 amount stipulated orally. All remaining amounts in the schedule were stipulated by the parties.↩
5. Petitioner sought to qualify for ordinary loss under sec. 1244. To qualify as sec. 1244 stock and to be entitled to ordinary loss treatment, petitioner would have to meet numerous requirements under sec. 1244 and the regulations, and he must have claimed his loss and designated it as a sec. 1244 loss, along with other required information on a return. It is clear that petitioner seeks sec. 1244 treatment as an afterthought and it is most unlikely that he has satisfied the statutory or regulatory requirements. See .↩
6. If petitioner intends to file a motion in accord with our Rules, he must demonstrate that respondent's position was not substantially justified; i.e., that legal precedent does not substantially support respondent's position given the facts available to respondent. Rule 232(e); . We consider the basis for respondent's legal position and the manner in which the position was maintained. . Although petitioner prevailed with respect to respondent's entire determination, it is unlikely that we could find respondent's position was either unreasonable or not substantially justified. Respondent's determination was attributable to petitioner's failure to file and poor records. After petitioner sorted out and organized his records, respondent promptly offered to concede the deficiencies. It was petitioner's refusal to accept that concession that unreasonably protracted this matter.↩